Carl C. CORSON and Sally A. Corson, his wife, Plaintiffs,

v.

FIRST JERSEY SECURITIES, INC., Robert E. Brennan, Jack Mondel and Jay M. Ingalls, jointly, severally and in the alternative, Defendants.

Civ. A. No. 80–720.

United States District Court, D. New Jersey.

May 10, 1982.

Andrew E. Weiner, Haddonfield, N. J., Judah I. Labovitz, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiffs.

Ronald J. Riccio, Robinson, Wayne, Greenberg, Levin, Riccio and LaSala, Newark, N. J., for defendants.

## OPINION

GERRY, District Judge.

This is an action for damages under the securities laws—§ 10(b) and common law fraud. Plaintiffs allege that defendants were involved in a distribution of certain securities. Defendants purchased the securities for its own account and then sold them to plaintiffs at inflated prices. In addition, defendants represented to plaintiffs that the securities were "hot" issues. Defendants told plaintiffs that they were preferred customers and were getting a good deal. Plaintiffs allege that these statements were misleading and calculated to obtain their reliance. The aforesaid conduct is claimed to violate Rules 10b–5 and 10b–6, made actionable pursuant to § 10(b) of the Securities Exchange Act of 1934, and to constitute common law fraud.

Defendants have moved for summary judgment to dismiss the complaint on the ground that plaintiffs did not institute this action within the applicable limitations period.

Plaintiffs contend that the applicable statute is the six year limitation over actions for common law fraud and that their claims were timely brought under such a statute. Even assuming that the two year statute applies, plaintiffs argue that the statute was tolled during administrative proceedings and that the statute did not begin to run until plaintiffs discovered or could, in the exercise of reasonable diligence, have discovered the existence of the alleged fraud.

The Third Circuit has spoken to the question of the appropriate statute of limitations for an action under § 10(b) in two recent decisions.

In *Roberts v. Magnetic Metals Co.*, 611 F.2d 450 (3d Cir. 1979), Judge Gibbons, writing for a divided court, held the six year statute applicable to an action brought by a defrauded seller. Finding that the

New Jersey Uniform Securities Act (NJUSA) protected only *buyers* of securities and did not deal with the fiduciary duties of officers, directors or insiders, nor with frauds perpetrated by buyers or tenderees in a merger, Judge Gibbons determined that the statute lacked even potential application to the transactions by means of which the seller suffered a loss. In addition, the NJUSA contained a savings clause for common law remedies, negating any suggestion that the two year time bar of the Act was intended to supplant time bars otherwise applicable to pre-existing causes of action. Finally, the plaintiffs' remedies under sections 10(b) and 14(a) of the Exchange Act are non-exclusive and coexist with rights under state common law, the violation of which could be asserted in an action for fraud, which action would not be time barred. Thus, the enforcement of the two year limitation in NJUSA in the federal causes of action would not accommodate the state's policy of repose but would merely deprive the plaintiff of the only forum (since federal jurisdiction of securities claims is exclusive) with jurisdiction to consider all the bases for relief sought. Accordingly, Judge Gibbons concluded that the six year statute applied.

Judge Sloviter, in concurrence, agreed that the six year statute applied but stated that the determination should be approached not from the perspective of the state's policy of repose but from that of furthering federal policy. Observing that Congress in enacting the securities statutes intended that they be applied in addition to, and not in place of, applicable non-conflicting state statutes, Judge Sloviter concluded that Congress's deference to state law:

> ... would in ordinary circumstances lead us to the application of the statute of limitations provisions in the New Jersey blue sky law. That would seemingly supply the provision most consonant with and complementary to that of the federal scheme.

*Id.* at 459. However, she distinguished the apparent general circumstance from the situation in *Roberts*, where a *seller* was claim-

ing damages as a result of violation of the federal act. New Jersey's omission of sellers from the remedy provisions under the Uniform Securities Act was not intended to deny sellers relief but was based upon the perception that such individuals were adequately protected under the common law:

There is no clear need to create any civil liability against buyers as distinct from sellers. Although the lower federal courts have uniformly implied a civil cause of action against fraudulent buyers under the SEC rule, the federal courts when applying federal law do not have at their disposal all of the common-law and equitable remedies of deceit and rescission which are available to the state courts without benefit of statute. In the area of civil liability, moreover, it seems not only unnecessary but unwise to disturb the general jurisprudence which has been developing with reference, for example, to the obligation of corporate insiders to make affirmative disclosure when purchasing from existing stockholders. On the other hand, the general law is not adequate to deal with flagrant cases of fraud by buyers on a criminal level, and there can, of course, be no public action for an injunction against such practices without specific statutory authority.

L. Loss, Commentary on the Uniform Securities Act 8 (1976). Thus, an action in state court by a seller against a fraudulent buyer could only be asserted under the common law and was governed by the six year limitation and therefore such a limitation would pertain to an action under §§ 10(b) and 14(a) brought by a seller. Judge Gibbons in his opinion for the court indicated his agreement with Judge Sloviter's approach.

Judge Seitz, in dissent, would have applied the two year limitation contained in the NJUSA.

Based upon the reasoning of the court in *Roberts*, it would appear that the two year limitation would apply to the instant cause of action against a fraudulent seller. The key determinant for both judges in *Roberts* for rejecting the two year statute was the fact that the New Jersey blue sky law provided *no* remedy for defrauded sellers. In the instant case, plaintiff *buyers* claim damages as a result of fraudulent sale. The NJUSA specifically protects individuals in the plaintiffs' position. Thus, in this "ordinary circumstance," the congressional recognition of "the value of the concurrent operation of the federal statute and non-conflicting state securities actions ... would lead to the application of the statute of limitations provided in the state securities act." *Roberts, supra*, at 459 (Sloviter, J., concurring).

Despite the apparent clear import of *Roberts*, plaintiffs argue that the two year statute should only be applied where the Uniform Act has provided the plaintiff with a cause of action for the conduct alleged, *and* the Act was intended to supplant, rather than supplement available common law remedies. Plaintiffs' position finds support in the subsequent opinion of the Third Circuit in *Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605 (3d Cir. 1980).

In *Biggans*, Judge Sloviter, writing for the majority, held that the six year statute of limitations for common law fraud applied to a cause of action under § 10(b) of the Securities Exchange Act and § 17(a) of the Securities Act of 1933 brought by the owner of a discretionary trading account against his broker for "churning." Judge Sloviter sought to minimize the distinctions between her own approach in *Roberts* and that of Judge Gibbons by observing that both approaches depended upon an examination of the same factors. Chief among those factors was the unavailability of a civil remedy to sellers against fraudulent buyers. In *Biggans*, in contrast to *Roberts*, the relevant Pennsylvania Securities Act prohibited churning activities. However, no civil damage remedy was provided to a defrauded buyer for such conduct on the part of a broker dealer. As in *Roberts*, the court found that the plaintiff was limited to a claim for fraud and breach of fiduciary duty under the common law. Thus, it concluded that the rationale of *Roberts* applied, and the six year fraud limitation governed.

Thereafter, in passing, Judge Sloviter noted that

Where the state blue sky law does not provide the plaintiff with a cause of action for the relief requested, but common law does, and where the state legislature framed its statute to supplement, rather than supplant, available common law remedies, it is the common law limitations period which must be applied in federal securities action.

*Id.* at 610.

Plaintiffs rely on the above quoted language to require a two-pronged determination prior to selection of a limitation other than the six year period. Plaintiffs' position misreads appropriate authority.

The decision in *Biggans* relies heavily on the reasoning of *Roberts* and cannot be read separate and apart from that earlier precedent. Nothing in *Roberts* indicates that the court would require a wholesale abrogation of common law remedies as a prerequisite to the application of the blue sky law statute of limitation. In fact, in *Roberts*, both Judges Gibbons and Sloviter recognized that the NJUSA contained a savings clause. Despite the fact that the clause preserved common law fraud remedies for either buyers or sellers, both opinions recognized that the NJUSA partially supplanted such remedies in the case of defrauded buyers by providing a civil damages remedy based upon a sale by means of a material misrepresentation or of an omission of a material fact.

If plaintiffs' interpretation of *Biggans* were to prevail, the state blue sky statute of limitations would never pertain to a federal securities claim because the blue sky law, by design, was not intended to preempt the field with respect to available remedies and does preserve common law causes of action. If the court had intended to hold that only the six year limitation applied, it would have done so in much clearer terms.

However, the court in *Biggans* did not have to reach such a result but followed the *Roberts* balancing analysis. Under such an analysis, it is clear that plaintiffs as buyers would have a remedy under the NJUSA.

As Judge Gibbons observed in *Roberts*: "By its own terms the New Jersey Uniform Securities Act protects *buyers* of securities." In addition, the type of claim raised by plaintiffs herein—that defendant sellers provided them with untrue or misleading information and failed to provide them with material facts, is precisely the type of conduct subject to the remedy provisions of the New Jersey statute.

Based upon these factors, it would appear that application of the two year statute of limitation would most appropriately comport with the federal policy embodied in the Securities Laws.

Plaintiffs attempt to avoid the clear import of the decision in *Roberts* by arguing that the claims they raise under § 10(b) are broader than those actionable under the NJUSA. Such a distinction would not, under *Roberts*, appear to be relevant to a determination of which statute of limitations applies. The more appropriate inquiry concerns whether the plaintiff is a member of the group protected by the remedy provisions of the state statute and whether the conduct of the defendant complained of under § 10(b) is of a type generally proscribed by the state statute and actionable thereunder. If the inquiry is satisfied, the statutory limitation should be applied.

Thus, the fact that plaintiffs have asserted a violation of Rule 10b–6 is not critical to a resolution of the limitations question. Plaintiffs allege fraud on the part of defendants because they sold, as sellers, securities to plaintiffs at a time when they were engaged in the distribution of the same securities as broker-dealer. Defendants' failure to disclose their dual status constituted an "omission to state a material fact" and was also, by definition in Rule 10b–6, deceptive. Since such omissions on the part of sellers are cognizable under the NJUSA and since the plaintiffs complain of conduct of the defendants *qua* sellers, plaintiffs' claims are of a type which would be actionable under the state blue sky law. Thus, the two year statute of that law applies to plaintiffs' claims.

To hold otherwise, to differentiate among potential causes of actions by buyers under 10(b), runs the risk of unduly complicating the determination of the limitations issue. *See Biggans, supra*, at 611 (Weis, J., *dissenting*). Such an approach is consistent with that of Chief Judge Latchum in *Hill v. Der*, 521 F.Supp. 1370 (D.Del.1981).

*IDS Progressive Fund, Inc. v. First of Michigan*, 533 F.2d 340 (6th Cir. 1976), does reach a contrary result. However, the Sixth Circuit requires that the precise cause of action under § 10(b) be available under state law in order for the blue sky law statute of limitations to apply. Such an approach differs significantly from that of the Third Circuit in *Roberts* and *Biggans* and therefore is not persuasive. In addition, it would serve to further complicate the already convoluted task of ascertaining the appropriate limitations period, an important consideration to the dissenters in both *Roberts* and *Biggans.*

Concluding that the two year NJU-SA limitation applies does not end the court's inquiry. Plaintiffs have contended that the defendants have not demonstrated that dismissal must follow from such an inquiry because the statute of limitation has been equitably tolled during the pendency of Securities and Exchange Commission (SEC) administrative proceedings.

Whether the existence of an SEC investigation should operate to toll the running of the statute of limitations on a private enforcement action appears to be a question of first impression.

In *Burnett v. New York Central RR. Co.*, 380 U.S. 424, 426, 85 S.Ct. 1050, 1053, 13 L.Ed.2d 941 (1965), the Supreme Court indicated that "the basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable ... after the prescribed time.'" (Citation omitted.) The relevant inquiry is whether congressional purpose is effectuated by tolling the statute of limitations. Such purpose is discernible from the purposes and policies underlying the limitations provisions contained in the federal statute, the statute itself, and the remedial scheme developed for the enforcement of the rights given by the Act. *Id.* at 427, 85 S.Ct. at 1054.

The 1934 Act regulates securities exchanges and securities markets. 15 U.S.C. § 78b. *See Schoenbaum v. Firstbrook*, 405 F.2d 200 (2d Cir. 1968). The purpose of this regulation is to insure fair dealing and to protect investors from harmful or unfair trading practices. *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Ware*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973).

The Act as originally enacted by Congress contained no provisions for private damage actions. However, private rights of action for damages has been implied by the courts under §§ 10(b) and 14(a). [Note —§ 16 permits a shareholder to sue on behalf of the corporation, an officer, director or 10% shareholder to recover "short swings" profits. No private damages are authorized.] Because a private cause of action originated not in express congressional creation of such a claim but rather through judicial determination that the purposes of the legislation necessitated the availability of such relief, the administrative enforcement procedures provided for in the Act are wholly separate from and independent of private enforcement remedies. Moreover, the enforcement proceeding instituted in the instant case would provide no remedy for private investors but would only result in administrative sanctions. Thus, there is no basis in the purpose of the statutes nor in the existence of separate schemes for private and administrative enforcement to infer that the statute of limitations should be tolled during administrative proceedings.

*Mt. Hood Stages, Inc. v. Greyhound Corp.*, 616 F.2d 394 (9th Cir.), *cert. denied*, 449 U.S. 831, 101 S.Ct. 99, 66 L.Ed.2d 36 (1980), relied on by plaintiffs, does not compel a contrary conclusion. In *Mt. Hood*, the court faced the question of whether the statute of limitation contained in the antitrust laws was tolled during an Interstate Commerce Commission proceeding to determine whether the issuance of a certificate

of authority to defendant was improper and based upon false representations on the part of defendant. Plaintiff's antitrust action would be precluded if Greyhound's certificate was properly issued since carriers are relieved from the operation of the antitrust laws insofar as may be necessary to operate a franchise acquired upon Commission approval. Thus, as the court found, plaintiff's cause of action "created a dispute only the Commission could resolve." *Id.* at 398. The tolling of the antitrust limitation during the pendency of the Interstate Commerce Commission proceeding permitted an accommodation of the Interstate Commerce Commission's responsibility to effectuate the national transportation policy with the court's function in the enforcement of national antitrust policy because the resolution of the issues before the Commission was a prerequisite to a judicial determination of antitrust liability.

In the instant case, plaintiff has not pointed to any determinations which can only be resolved by the SEC. Therefore, the termination of administrative procedures are not prerequisite to or necessary to effectuate judicial action. Plaintiffs' contention that the SEC is charged with primary responsibility for enforcement of the 1934 Act hardly satisfies the *Mt. Hood* standard since that enforcement responsibility is separate and apart from implied private damages remedies. As noted before, the court is fully able to determine the existence of a 10(b) claim without the need for a prior resolution of facts within the special expertise of the SEC. Thus, the initiation of SEC proceedings in the instant case bears no resemblance to the critical and necessary prerequisite role of the Interstate Commerce Commission in *Mt. Hood.*

Accordingly, there is no basis either in the statutory scheme or in case law for concluding that the statute of limitations should be tolled during SEC proceedings. ■ Where administrative and judicial remedies are separate and distinct, tolling would be inappropriate. *Cf. Burns v. Union Pac. R. R.*, 564 F.2d 20 (8th Cir. 1977) (Title VII administrative proceedings, § 1981 sep-

arate remedies). Tolling is only proper where the existence of the former proceeding effectively prevents the pursuit or exercise of the latter remedy. *Fernon v. Itkin*, 476 F.Supp. 1 (M.D.Fla.1977), *aff'd* 604 F.2d 669 (5th Cir. 1979). *Accord, Mt. Hood, supra; Brewster v. Secretary of U. S. Army*, 489 F.Supp. 85 (E.D.N.Y.1980).

■ Alternatively, plaintiffs contend that defendants have not established that plaintiffs' complaint was filed more than two years after plaintiffs discovered defendants' fraud.

An examination of plaintiffs' complaint reveals allegations that certain allegedly fraudulently induced sales occurred over a period from 1976 to sometime in 1978. This time period is corrected in the deposition of one of plaintiffs to cover 1976 to September 16, 1977. The complaint contains no allegations as to when plaintiffs discovered that they had been defrauded or misled. Thus, the time periods set forth in the complaint as corrected by the deposition would control the question of whether the complaint was brought within the applicable two year limitation period. The complaint, filed March 13, 1980, or more than three years after the last sale of September 17, 1977, is not timely.

■ Plaintiffs' contention that defendants must establish that plaintiffs did not discover the fraud after September 17, 1977 misconstrues the rules of pleading. It is plaintiffs' obligation in the first instance to plead fraudulent concealment. *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974). *See also Brick v. Dominion Mortgage and Realty Trust*, 442 F.Supp. 283, 292 (W.D.N.Y. 1977); *Kroungold v. Triester*, 407 F.Supp. 414, 419 (E.D.Pa.1975). Moreover, conclusory allegations that plaintiffs had no knowledge of untrue or misleading statements prior to a certain date are insufficient to raise an issue of fraudulent concealment. *Hill v. Der, supra.* Thus, plaintiffs' suggestion in their brief that they did not know of the fraud at the time of the purchase of the securities fails to satisfy the requirement of pleading fraudulent concealment with spec-

ificity. Not only is plaintiffs' suggestion not contained in a formal pleading, it is also conclusory. Accordingly, plaintiffs' claim that it discovered the fraud sometime after the last alleged sale is not entitled to consideration and cannot preclude a determination that plaintiffs' complaint in its present form is time barred.

For all of the foregoing reasons, defendants' motion for summary judgment is granted, and plaintiffs' complaint will be dismissed. Defendants' motion to strike the punitive damages claim is moot.

Counsel for defendants will submit an appropriate order.